(Lucas County, Common Pleas Court.)
September Term, 1894.

## THE BOWLER & BURDICK CO. v. THE TOLEDO & OHIO CENTRAL RAILROAD COMPANY.

---

*Samples of goods carried in sample trunk —Loss in hands of railroad* — Where a travelling agent for a jewelry house checked

his trunk, a heavy sample trunk, containing samples of jewelry of great value, as personal baggage, paying for extra weight, but without notice to the baggage master of the railroad of the character and value of the contents, and the trunk is lost in a railroad accident, caused by the negligence of the company, the railroad company is not liable for the value of such contents of the trunk.

*Knowledge of contents by railroad agent —Appearance of trunk.*—The fact that the agent of the railroad was at plaintiff's room when the samples were exhibited, and might have seen them, but testifies he did not; nor the fact that from the appearance of the trunk, he might have known the same to be a sample trunk, are not sufficient to prove knowledge of such agent.

---

Motion to take the case from the jury.

LEMMON, J.

Gentlemen, I have given what attention I have been able, since the adjournment of the court last evening, to the questions which were submitted for the determination of the court, and I do not find that the questions here submitted have been fully reached and disposed of by the Supreme Court of Ohio. Certain principles, however, have been established by our own Supreme Court, which indicate the trend of thought, and which will probably be followed by that court upon questions of this kind.

The case cited from 148 U S. (Humphreys v. Perry, p. 627,) presents facts very similar to the case at bar, and we feel that it is our duty to consider that case somewhat in stating the conclusion to which we shall arrive. I will call attention particularly to the remarks of Judge Blatchford, in deciding this case, in which he states the finding of the court as to the facts. He says —after he has gone cover the testimony somewhat and having quoted along from the witnesses:

"The evidence, therefore, is that the trunk which Perry delivered to be checked as his personal baggage, was a wooden trunk of dark color, iron bound, heavy for its size, and in size what a sampleman would call small; the question arises on these facts, whether the agent was bound to know, or to be presumed to know, that such a trunk contained a stock of jewelry. If he was, it must be presumed, contrary to the positive evidence, that he could tell what was in the trunk by looking at it or handling it, and this, notwithstanding the agent testified as follows, on cross examination: 'Q. Don't you know, from your experience of eleven years, if a trunk containing jewelry came into your possession and you handled it, you would be able to tell what it was? A. No, sir; and nobody else.'

"The hypothetical trunk put to Patterson on cross-examination was described as a trunk with heavy iron corners and iron clasps, iron along the corners and iron bandages all around it, and two or three strong locks in front. That hypothetical trunk does not appear to be such a trunk as Perry delivered to the agent.

"Perry, as a passenger on a passenger train, was bound to act in good faith in dealing with the carrier. He presented the trunk to the baggage agent as containing his personal baggage, and got a check for it as such; and that being so, he cannot recover for the loss of a stock of jewelry contained in it. No circumstances occurred, according to the evidence, which required the baggage agent to make inquiries as to the contents of the trunk so presented as personal baggage. The presentation of the trunk, under the circumstances, amounted to a representation that its contents were personal baggage. The fact that Perry and other persons, on other occasions, had obtained, on passenger tickets, checks from other railroad companies for trunks containing merchandise, by representing them as containing personal baggage, furnishes no good reason for permitting a recovery in the present case. There is no evidence to show that, on the occasions where Perry and other travelers received checks, on passenger tickets, for trunks containing jewelry, that the carrier knew what were the contents of the trunks. The testimony is that John H. Perry did not know of a railroad company which would receive and check a trunk as a passenger's baggage, which was filled with valuable jewelry."

The evidence in the case from which I have been reading makes the case very similar—almost entirely parallel—with the case at bar. In the case at bar the testimony was slightly different, and the difference of testimony, I apprehend, arises largely because of a difference of positiveness in the witnesses testifying in the two cases. There was great positiveness in the statement of the witness in the case decided by Judge Blatchford. His answer: "No, sir; and nobody else", is quite in contrast with that of the witness who was agent at Glouster; but the positiveness of a statement in the form of the answer, those who have been accustomed for years to examine the testimony of witnesses know, is not the governing rule; they necessarily look to all the circumstances; the manner in which the party is placed; how his attention is drawn to the question; what opportunities he has for observation, and what are the possibilities of his correctly observing, rather than to the positiveness of a witness in a statement. Now, the witness who represented the company says he does not remember calling upon the plaintiff's agent and having the conversation that was referred to. We are positive, from the testimony, that he did so call, and that he did have that conversation, and that those goods were there before him; the weight of the evidence, we think, clearly shows that. But it also shows, we are equally satisfied, that the mind of the agent was not impressed with those circumstances; he went there for a certain purpose, was intent upon that,

asked if the extra baggage had been paid, and, on getting the information that it had been paid, turned and walked out. Now, he was not there for such a length of time and under such circumstances as would necessarily charge him with notice of the property so lying upon the table of a shelf there. He had nothing to do with that, he had no concern with it. He called there and asked the question—a matter of business which concerned his duty to the railroad company. That answer was made, and the evidence does not disclose that he remained a moment afterwards, but turned around and walked out. Well, it is a common observation that where a person goes into a room in the daytime, out from the sunlight into a place where it is necessarily darker than outside, he does not at once see with distinctness what is in that room. The eye requires a little bit of time to adjust itself to the darker situation, and he is not, under these circumstances, as likely to see and observe what is in that room as he would be if he remained there until the eye had adjusted itself to the new situation. Are we enabled, under these circumstances, to say then, that this witness, when he says, with apparent probity of intention and precaution, that he didn't see the property that was lying there—that he didn't know—can we say that he did see? If he did not see it, certainly the Company is not to be blamed because of the fact that he might have seen it and did not. He is not charged with any duty in reference to that matter. If he did not see it, there was nothing to put him upon inquiry when he saw the trunks. No sir there any evidence that his attention was called to the fact that that particular property, if he did see it, was carried in these particular trunks. All the evidence, therefore, which goes to charge the Company with notice in reference to the character of the property which they were receiving, was the appearance of the trunks themselves. And the same evidence in that regard, almost in the same words, as fully as in the case at bar, was presented in the case decided by the Supreme Court of the United States. There the trunks are described—such trunks as are described in this case; they were visible. They were so described, not only by the owners, but by the railroad agents and servants themselves. There is no difference in the testimony in that regard, but Judge Blatchford, in pronouncing the opinion of the Court, says there was no evidence tending to show that there was knowledge upon the part of the railroad company of the property and goods which were in these trunks.

On the second question which was made: That the railroad is liable, provided that it has been negligent, we concede that the duty lay upon the railroad company to carry with care, and that for a failure to discharge that duty, the railroad company would, in our judgment, have been liable to every person standing in a relation to the railroad company that would enable them to insist upon this duty upon the part of the railroad company to them.

It is not every person who has a right to sue a railroad company, merely because the railroad company has been negligent. If a tramp should get upon a train, to steal a ride thereon, unlawfully there in fact, as a trespasser, and conceals himself,, and, by reason of the negligent management of the train, he is injured, he has no remedy against the railroad company, notwithstanding the railroad company is negligent, because the railroad company owed no contract duty to him. It would be different if one of the agents or servants of the company should assault him and injure him, for that they would not have a right to do, even under those circumstances; for mere negligence, he is not in a position to make the railroad company respond to him in damages, because the railroad company owed no obligation to him. In like manner, we believe it is correct logic to say that if a passenger, who gets upon a railroad train and pays his fare, and is therefore lawfully there, carries property of great value, without notice to the railroad company, carries it upon his person so that the railroad company is chargeable with no duty in reference to that property and received nothing for carrying that property, the owner of that property sustains no right as against the railroad company, to damages because of a loss of that property, although it is lost by reason of negligence upon the part of the railroad company. Now, that is directly decided in one of the cases that was cited in the argumnt of this case, by the Supreme Court of our own State. It is a case where a bridge had become unsafe because the centre pier of a span of the bridge had become undermined by water. A passenger took passage upon a railroad train having in his possession a large quantity of money, belonging to a third person, which he was carrying to his destination—Cincinnati, perhaps. The train, in passing over this bridge, went down, and the man was injured and burned up, and the money lost, and the owner of the money brought his action against the railroad company. The Supreme Court of Ohio in that case say directly that there is no liability.

The syllabus of that case is as follows:— (First National Bk. of Greenfield v. Marietta & Cinti. R. R. Co., 20 Ohio St. 259.

"While a passenger train of a railroad was crossing a bridge constructed on the line of its road over a creek, the bridge gave way, its central pier having been undermined by the waters of the creek, and the train was precipitated into the creek, killing a passenger who had about his person a package of money which he was carrying for the plaintiff. By this catastrophe the stoves on the train were overturned, setting fire to the debris of the cars and consuming the package of money with the body of the passenger. Upon suit brought by the owner of the money to recover from the railroad company for the value of the package,

his petition stated the foregoing facts, and charged that the accident occurred through the negligence and unskillfulness of the defendant in the construction and maintenance of the bridge and in the running of the train. On demurrer to this petition, on the ground that it did not state facts sufficient to constitute a cause of action, held, 2, that the defendant as a common carrier of passengers is not liable for the loss of money kept in the sole custody of a passenger, and which he carried, without notice to the defendant, for a purpose unconnected with the expenses of the journey, notwithstanding such loss was occasioned by the negligence of defendant's servants; and that the demurrer to the petition was well taken.''

Now, notwithstanding the negligence which was charged in the petition here upon the part of the railroad company, they hold that the railroad company was not liable to the owner of the money. That case differs slightly from the case at bar, in this that in that case the money was upon the person of the passenger, and under his personal control; in this case, the jewelry was in the trunks, and these trunks were upon the cars. To this extent there is a difference; but I am unable to see that there is any difference in the proposition that the railroad company owed no obligation to the owner of the money by reason of any contract relation with that owner. They had received nothing from him for carrying the money, they were not aware that the money was being carried; and these facts exist in this case, precisely as they did in that. The Toledo & Ohio Central Railway Company, for aught that is shown in the testimony, received nothing for carrying this jewelry as property, nothing because of its value, nothing from the owner of the property, either directly or through its agents, and, under these circumstances we think that the case is nearly parallel—the case at bar—and in the light of and instructed by the decision of the Supreme Court of the United States, as we must be, and the finding in the cases in Massachusetts covering the case at bar, we think the court should follow the authorities this found, and sustain the motion in this case, and take the case from the jury. The motion therefore wlil be granted.